208 N.J. Super. 343 (1986)
506 A.2d 14
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN E. TISCHIO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 28, 1986.
Decided February 26, 1986.
*344 Before Judges ANTELL, SHEBELL and MUIR.
Robert B. Gigl, Jr. argued the cause for appellant (Podvey, Sachs & Catenacci, attorneys; Robert B. Gigl, on the brief).
*345 Simon L. Rosenbach, Assistant Prosecutor, argued the cause for respondent (Alan A. Rockoff, Middlesex County Prosecutor, attorney; Simon L. Rosenbach, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Defendant John Tischio was stopped at approximately 8:15 p.m. on April 11, 1984 for allegedly operating his vehicle in an erratic manner. He advised the officer that he had three to four beers. After the officer smelled alcohol and observed defendant's knees sag and slight swaying and staggering he placed him under arrest and took him to headquarters for a breathalyzer examination. The first test was conducted at 9:15 and the second at 9:24 p.m. Each reading was .11 percent blood alcohol.
Defendant testified in the municipal court that he was not under the influence. He stated he left a cafe at 8:00 p.m. after having had three glasses of tap beer which he identified as Genessee cream ale, beginning between 6:15 and 6:30 p.m. Defendant presented expert testimony to demonstrate that if the readings of blood alcohol were .11 percent at 9:15 and 9:24 p.m. that even if defendant had as many as five beers, at the time he drove between 8:00 and 8:15 his blood alcohol would have been below the .10 percent concentration set forth in N.J.S.A. 39:4-50(a).
Defendant was convicted in the municipal court of driving with a blood alcohol concentration of .10 percent or more. His conviction was affirmed in the Law Division.
Defendant appeals, alleging he was entitled to a judgment of acquittal at the conclusion of the State's case, his conviction was against the weight of the evidence, the court misapplied the burden of proof, the court committed error in allowing into evidence a breathalyzer certification card which had an alteration as to its date and that N.J.S.A. 39:4-50(a) is unconstitutional in that it violates due process.
*346 The breathalyzer inspection certificates introduced as evidence on behalf of the State were admissible as an exception to the Hearsay Rule. State v. McGeary, 129 N.J. Super. 219, 226 (App.Div. 1974). Defendant's position that one of the certifications was not properly authenticated because there was an alteration as to the date is without merit. The report was signed by the New Jersey State Trooper who carried out the inspection and the date change had initials next to it which corresponded to the trooper's name. We are satisfied under the circumstances that the trial judge did not abuse his discretion in admitting the certification in evidence.
Defendant urges us to declare the 1983 amendment to N.J.S.A. 39:4-50(a) unconstitutional in that it created a separate motor vehicle offense if a person "operates a motor vehicle with a blood alcohol concentration of .10 percent or more by way of alcohol in the defendant's blood...." He asserts that this provision does not give fair warning to the ordinary individual of the prohibited conduct and as a result may trap the innocent. Defendant argues that:
The preciseness of the penalized conduct makes it virtually impossible for anyone to comply with the statute unless he/she is armed with a breathalyzer. No reasonable person can know when his blood alcohol content has gone from a .09% to a .10% without the aid of a mechanical device.
The constitutionality of the statute was settled in State v. Kreyer, 201 N.J. Super. 202 (App.Div. 1985).
The municipal court judge convicted the defendant solely on the basis of the violation of the .10 percent standard after finding that based on the physical evidence he would have a substantial doubt as to whether defendant was guilty of operating a motor vehicle under the influence of intoxicating liquor. The Law Division appears to have affirmed on the same basis.
It is defendant's position that the State failed to prove the necessary elements of its case beyond a reasonable doubt because the .11 percent blood alcohol reading which was taken an hour after his arrest was higher than it would have been when he was actually driving his car. Defendant asserts it was *347 necessary for the State to introduce evidence through an officer or independent expert to prove defendant's blood alcohol level "at the critical time of operation."
We agree that the 1983 amendment to N.J.S.A. 39:4-50(a) created a new offense in that it established an objective standard for evaluating whether there had been a drinking-driving violation. However, we do not accept defendant's premise that the State, after obtaining a breathalyzer reading of .10 percent or greater, must demonstrate through clear scientific evidence or expert testimony that the blood alcohol level was greater than.10 percent at the exact time of operation of the vehicle.
The statute reflects a simple legislative plan to establish a violation where the administration of the breathalyzer or other established tests for determining blood alcohol content produces a reading of .10 percent blood alcohol or greater at any time after operation so long as there has been no ingestion of alcohol between the time of operation and the time of testing. Further proof on the issue of the blood alcohol level at the time of operation is unnecessary.
If defendant's position were accepted and the violation construed to obtain only where the blood alcohol reading could be extrapolated to show that there was .10 percent or greater blood alcohol concentration at the time of operation an anomalous result would occur. An operator who had imbibed sufficient alcohol to result in a blood alcohol concentration above the statutory limit could not be convicted if apprehended prior to the blood alcohol concentration passing that level, even though its occurrence is assured. How much further down the road one may drive after drinking before the operation becomes unlawful would vary from driver to driver, but in the mean time all who consume enough alcohol would sit as moving time bombs which could not be disarmed because the offending alcohol has not yet been sufficiently concentrated in the blood.
Although such an interpretation is within the literal terms of the statute, such an anomalous or absurd result could not have *348 been intended by the Legislature. N.J. Builders, Owners and Managers Association v. Blair, 60 N.J. 330, 338 (1972); Giordano v. City Commission of the City of Newark, 2 N.J. 585, 594 (1949).
In our view the statute focuses on the operation of a motor vehicle when there is sufficient alcohol in the driver's system to produce the proscribed reading so long as there has been no further ingestion of alcohol between the time of operation and the time of testing. The law was not intended to encourage a perilous race to reach one's destination, whether it be home or the next bar, before the blood alcohol concentration reaches the prohibited level.
We do not envision any unjust result as a consequence of our ruling inasmuch as a driver cannot be arrested or detained for the purpose of testing unless the arresting officer has probable cause to believe that the person was in control of a motor vehicle on the public highway while under the influence of intoxicating liquor. N.J.S.A. 39:4-50.4a.
We affirm defendant's conviction and sentence.