212 N.J. Super. 276 (1986)
514 A.2d 879
STATE OF NEW JERSEY, PLAINTIFF,
v.
BRUCE D. ALLEN, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided June 16, 1986.
*277 Terri-Anne Duda for plaintiff (Stephen G. Raymond, Burlington County Pros. Atty.).
Robert P. Weishoff for defendant (Mathews, Sitzler, Weishoff & Sitzler, attorneys).
HAINES, A.J.S.C.
Defendant, Bruce Allen, was arrested and charged with driving while intoxicated ("DWI"). He was given two breathalyzer tests which produced consecutive readings of 0.13% and 0.14%. Allen claimed that his blood alcohol content at the time of the arrest was less than the statutorily mandated minimum reading of 0.10%. N.J.S.A. 39:4-50(a). He was prepared to produce expert testimony in support of this claim.
Allen was subject to the ruling in State v. Tischio, 208 N.J. Super. 343 (App.Div. 1986), certif. den. 104 N.J. 420 (1986), which involved a defendant charged with DWI whose breathalyzer reading was 0.11%. Defendant, Tischio, argued that "it was necessary for the State to introduce evidence through an officer or independent expert to prove ... [his] blood alcohol level at the critical time of operation." Id. at 346-347. The court held:
The statute reflects a simple legislative plan to establish a violation where the administration of the breathalyzer or other established tests for determining blood alcohol content produces a reading of .10 percent blood alcohol or greater *278 at any time after operation so long as there has been no ingestion of alcohol between the time of operation and the time of testing. Further proof of the issue of the blood alcohol level at the time of operation is unnecessary. [Id. at 347]
The court did not deny the admissibility of expert defense testimony extrapolating the breathalyzer readings to prove blood alcohol level at the time of driving. It simply denied any obligation on the part of the State to produce such testimony.
Tischio has been widely misread. Municipal court judges are refusing to permit expert extrapolation testimony in DWI cases because they interpret Tischio as denying its admissibility. (Six appeals from such rulings are now pending in this court.) Such is the case here. Defendant, who was prepared to offer such expert testimony, made a pretrial motion in the municipal court requesting a ruling on his right to do so. The court held that the expert would not be permitted to testify. An interlocutory appeal followed. This opinion holds that Tischio does not bar the proposed expert testimony and reverses the ruling below.[1]
No doubt some misinterpretation of Tischio resulted from the following statements in the Appellate Division's opinion:
If defendant's position was accepted and the violation construed to obtain only where the blood alcohol reading could be extrapolated to show that there was a .10 percent or greater blood alcohol concentration at the time of operation an anomalous result would occur. An operator who had imbibed sufficient alcohol to result in a blood alcohol concentration above the statutory limit could not be convicted if apprehended prior to the blood alcohol concentration passing that level, even though its occurrence is assured. How much further down the road one may drive after drinking before the operation becomes unlawful would vary from driver to driver, but in the meantime all who consume enough alcohol would sit as moving time bombs which could not be disarmed because the offending alcohol has not yet been sufficiently concentrated in the blood.
....
The law was not intended to encourage a perilous race to reach one's destination, whether it be home or the next bar, before the blood alcohol concentration reaches the prohibited level. [208 N.J. Super. at 347-348]
*279 The only issue raised in Tischio involved the State's burden of proof: Was it required to extrapolate the breathalyzer evidence in order to prove that defendant had a 0.10% or greater blood alcohol content when he was driving? The court held that the State did not have that burden. Its "time bomb" commentary was gratuitous  unnecessary to the decision of the issue raised in the appeal. It is therefore dicta and not binding here. Jamouneau v. Div. of Tax Appeals, 2 N.J. 325 (1949), defines the term:
The statement in the ... opinion ... was made specifically with respect to the situation there under discussion and is not to be understood as the pronouncement of a general principle. If the expression was intended for wider application, it is to be classed as judicial dictum because it was not necessary to the decision then being made; as such it is entitled to due consideration but does not invoke the principle of stare decisis. [at 332]
The difficulty with dicta is explained in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944):
It is timely again to remind counsel that words of our opinions are to be read in the light of the facts of the case under discussion. To keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court. General expressions transposed to other facts are often misleading. [323 U.S. at 132, 65 S.Ct. 165]
If the dicta in Tischio had been adopted by our Supreme Court, it would be entitled to "great weight." Lehigh Valley R.R. Co. v. Chapman, 35 N.J. 177, 187 (1961). The denial of certification, however, was not an adoption of the Tischio language. No case has been found which establishes any rule of deference to dicta by the Appellate Division. The statement in Jamouneau, for example, though broad enough to cover intermediate appellate courts, refers to an opinion of the former Court of Errors and Appeals, a court of last resort. Nevertheless, the Appellate Division, to which most appeals from trial courts are taken, renders decisions which are binding on those courts. Its dicta must be given respectful and conscientious consideration in view of its recognized high competence as well as its position in the judicial hierarchy.
*280 The consideration to be given the Tischio dicta does not make that dicta conclusive. Were it otherwise, dicta would be law. Irrelevant comments of upper courts, unrelated to the subject at hand, would "invoke the rule of stare decisis." But that is not the rule; dicta, if carefully weighed and found wanting, does not control. It is the weighing process that provides the respect to which all such dicta is entitled. Tischio's dicta, written in response to an issue not before the Tischio court but now before this one, is weighed here and is found wanting. That weighing consists of an analysis of the DWI statutory scheme and its history.
N.J.S.A. 39:4-50.1 made the 0.10% breathalyzer reading presumptive, saying:
In any prosecution for a violation of R.S. 39:4-50 relating to driving a vehicle while under the influence of intoxicating liquor, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's ... breath ... shall give rise to the following presumptions:
....
(3) If there was at that time 0.10 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor. [Emphasis supplied]
In 1983 paragraph (3) was deleted and the following related proviso inserted in N.J.S.A. 39:4-50:
(a) A person who operates a motor vehicle while under the influence of intoxicating liquor ... or operates a vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood shall be subject [to penalties]. [Emphasis supplied]
The committee statement annexed to the 1983 amendatory legislation says:
The bill, in its substitute form, requires a person whose blood alcohol concentration is 0.10% or greater be considered guilty of driving while intoxicated. Current law merely creates a presumption that such a person was under the influence of intoxicating liquor. The Attorney General's office has proposed the language incorporated in the substitute.
This statement leaves open the question of when the 0.10% concentration must exist. It could be interpreted by a willing reader as justifying the Tischio dicta. That interpretation, however, would ignore the language of the DWI statutes as well as the fact that the statement says nothing about time of *281 testing versus time of driving. It was not an interpretation upon which Tischio relied.
Tischio, in fact, makes no analysis of the legislation except to say that defendant's "interpretation is within the literal terms of the statute." 208 N.J. Super. at 347. The opinion also refers to the "simple legislative plan," ibid., when rejecting the argument that the State was obliged to extrapolate the breathalyzer result. It does not otherwise address the statutory language. It makes no reference to legislative history. A careful reading of the statute weighs heavily against the Tischio dicta.
N.J.S.A. 39:4-50.1 stated, in the material stricken by the 1983 amendment: "If there was at that time 0.10%...." Emphasis supplied. The words "at that time" referred to the time defendant was "driving a vehicle," a time fixed in the preamble to the statute which still commences: "In any prosecution for a violation of R.S. 39:4-50 relating to driving a vehicle while under the influence...." In short, the pre-1983 statute referred to the time of operation, not to the time of the breathalyzer test. The Tischio dicta suggests an opposite conclusion, apparently based upon the removal of the over-0.10% presumption in 1983. Nothing about that removal, however, indicates a change from time of driving to time of testing. The present 0.10% mandatory provision in N.J.S.A. 39:4-50 addresses "(a) person who operates a motor vehicle" and therefore requires an opposite reading.
Paragraphs (1) and (2) of N.J.S.A. 39:4-50.1 were not amended in 1983 and are still effective. They provide, respectively, that a breathalyzer reading of 0.05% shall create a presumption that defendant was not "under the influence," and that a reading of over 0.05% and less than 0.10% shall create no presumption, "but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant." Both paragraphs contain the words "at that time," clearly referring to the time defendant was driving. Tischio deals only with N.J.S.A. 39:4-50, the 0.10% and over law; it *282 does not address N.J.S.A. 39:4-50.1, which contains the under 0.10% law. Consequently, the Tischio dicta, if correct, produces a very peculiar legislative plan for DWI cases: the under-0.10% rules apply to the time of driving, while the over-0.10% rule applies to the time of testing. Further, in the case of a reading between 0.05% and 0.10%, "any other competent evidence" may be introduced which bears upon the DWI charge. N.J.S.A. 39:4-50.1. Typically, field test results are admissible. They relate to the time of driving, confirming the conclusion here that the breathalyzer reading relates to that time as well. If not, the evidence introduced in an under-0.10% case would be divided, not corroborative, part dealing with one time, part with another. The Legislature cannot have intended to make these odd distinctions and statutes should not be so construed. Marranca v. Harbo, 41 N.J. 569 (1964).
The straightforward language of N.J.S.A. 39:4-50(a), which makes a 0.10% reading conclusive, refers to the time of driving, not the time of testing. It says:
(a) A person who operates a motor vehicle while under the influence of intoxicating liquor ... or operates a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood ... shall be subject (to penalties) (Emphasis supplied.)
The language, "operates a motor vehicle with a blood alcohol concentration of 0.10%," leaves little room for interpretation.
The focus of the entire drunk driving law is upon the time of driving. Each part of that law should be construed with reference to the whole. State v. Brown, 22 N.J. 405 (1956). Two of its sections illustrate the point. N.J.S.A. 39:4-50.2 provides that any person who "operates a motor vehicle" on our highways thereby consents to having a breath sample taken. It contains a condition requiring the taking of samples to be "at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of N.J.S.A. 39:4-50." Emphasis supplied. Time of operation is the obvious focus. N.J.S.A. 39:4-50.4a provides penalties for refusing to take a *283 breathalyzer test. It requires the municipal court to determine "by a preponderance of the evidence whether the arresting officer had probable cause to believe that the person had been driving or was in actual physical control of a motor vehicle on the public highways ... while under the influence of intoxicating liquor." Emphasis supplied. Thus, "driving ... while under the influence" is an element of the offense. Obviously, in a refusal case, the intoxication of defendant cannot be related to the time of the test because no test is taken.
Perhaps the Legislature can enact a law which captures the Tischio dicta. It has yet to do so in the present statutory scheme, a scheme which imposes heavy penalties and requires strict construction. Neeld v. Giroux, 24 N.J. 224 (1957).
The Tischio dicta, if law, would raise unfortunate issues. The timing of the breathalyzer test would become all-important since blood alcohol content varies depending on the time lapse between alcohol consumption and testing. How much discretion should police have in this regard? What is the right of an accused to a speedy test, or the opposite? Can the police give successive tests until a 0.10% reading is obtained? What due process questions are raised? Tischio accepts a reading obtained "at any time after operation so long as there has been no ingestion of alcohol between the time of operation and the time of testing." 208 N.J. Super. at 347. (Incidentally recognizing the link between operation and testing.) Surely, the words "at any time" have some limitation. Will a 0.10% reading obtained 24 hours after operation be conclusive? Does the State have the burden of proving the absence of alcohol consumption after operation? Why should the State or the accused be burdened with these concerns? When extrapolation is permitted the concerns vanish.
This analysis, reflecting a respectful weighing of the Appellate Division's dicta denies its application here. Defendant is entitled to produce expert testimony extrapolating the results of the breathalyzer test. The ruling below is reversed.
NOTES
[1] Both State and defense agree with this interpretation of Tischio.