



## MEMORANDUM OPINION

No. 04-09-00282-CR

Robert Baez **CRUZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-5916B
Honorable George H. Goodwin, Judge Presiding[1]

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed: May 12, 2010

AFFIRMED

A jury found appellant Robert Baez Cruz guilty of the murder of Corey Baxter and assessed

punishment at life imprisonment. On appeal, appellant asserts the trial court erred by (1) not

suppressing his statement, (2) allowing the jury to hear him referencing discussions with his

attorneys, (3) denying his motion for a directed verdict, (4) allowing evidence of extraneous offenses,

and (5) allowing the State to engage in improper bolstering. We affirm.

---

[1] The Honorable George H. Goodwin, sitting by assignment, presided over the trial.

**ISSUES NOT PRESERVED FOR OUR REVIEW**

In his second issue on appeal, appellant argues the trial court erred by admitting portions of his DVD-recorded interrogation that contained references to his attorneys in violation of the federal and state constitutions. In his fifth issue on appeal, appellant argues the trial court erred by allowing improper bolstering testimony of another State's witness from Detective Bradley.

In order to preserve a complaint for appellate review, the complaining party must make a timely objection, request, or motion with sufficient specificity in the trial court and obtain a ruling on that objection, request, or motion. TEX. R. APP. P. 33.1(a). As to appellant's second issue, the record does not reflect that appellant objected to the admission of the DVD-recorded statement on the basis that it contained references to his attorneys in violation of his constitutional rights. As to appellant's fifth issue, the record shows appellant lodged several objections during Detective Bradley's testimony; however, appellant made no objection to any of Detective Bradley's testimony on the basis of bolstering. Therefore, these issues are not preserved for our review. *See id.*

**DVD-RECORDED INTERROGATION**

In his first issue on appeal, appellant argues the trial court abused its discretion by refusing to suppress his DVD-recorded interrogation because (1) he did not receive the proper warnings prior to questioning and (2) he was under the influence of methamphetamine, and therefore, he could not voluntarily waive his rights.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement. *Id.* We sustain the lower court's ruling if it is reasonably supported by the

record and is correct on any theory of law applicable to the case. *Id.* We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law to those facts. *Id.*

In order for an oral statement of the accused to be admissible, Texas Code of Criminal Procedure article 38.22, section 3 requires, among other things, that (1) the statement be electronically recorded, including by video tape, (2) the accused be given the warnings prescribed in section 2(a), and (3) the accused knowingly, intelligently, and voluntarily waive any rights set out in the warning. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon 2005). Section 2(a) requires the accused be given the following warnings: "(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any time . . . ." *Id.* § 2(a). However, the accused may waive his section 2(a) rights, and a waiver of those rights may be inferred from his actions and words. *State v. Oliver*, 29 S.W.3d 190, 191–92 (Tex. App.—San Antonio 2000, pet. ref'd). For instance, we may infer a waiver where an oral confession contains a recitation of the article 38.22 rights and the accused indicates he understands his rights and proceeds without hesitation to participate in the interview. *See id.* at 193.

Here, Detective Bradley interrogated appellant and electronically recorded the interrogation on DVD. The video shows Detective Bradley, prior to asking appellant questions, reading appellant the following:

You have the right to remain silent. You do not have to make any statement oral or written to anyone. Any statement that you make will be used in evidence against you in a court of law or at your trial. You have the right to have a lawyer present to advise you before and during any questioning by police officers or attorneys representing the State. You may have your own lawyer present, or, if you are unable to employ a lawyer, the court will appoint a lawyer for you free of charge now or at any other time. If you decide to talk with anyone, you can, or you can stop talking at anytime you want. The above rights are continuing rights which can be urged by you at any stage of these proceedings.

After reading appellant his rights, Detective Bradley asked appellant if he understood his rights. Appellant responded by affirmatively nodding his head up and down. Detective Bradley then asked appellant questions, and appellant responded without hesitation. Because Detective Bradley's warnings tracked the warnings required under article 38.22, we conclude appellant received the proper warnings.

Although there was some evidence that appellant was under the influence of methamphetamine during the interrogation, Detective Bradley testified that appellant "knew what he was doing . . . ." Additionally, appellant invoked his right to counsel once Detective Bradley began questioning him about another murder—an indication he was no longer comfortable answering questions without an attorney. Based on the totality of the circumstances, we conclude appellant knowingly, intelligently, and voluntarily waived his rights by affirming that he understood his rights and subsequently participating in the interrogation. Therefore, the trial court did not abuse its discretion in refusing to suppress the statement.

**MOTION FOR DIRECTED VERDICT**

In his third issue on appeal, appellant argues the trial court erred in denying his motion for a directed verdict because the evidence was legally insufficient for two reasons. First, he argues the accomplice witness testimony was not sufficiently corroborated because there was no evidence that

the assault in which he participated was sufficient to cause Baxter's death; at most, it corroborated only that he was guilty of aggravated assault. Therefore, he could not be convicted of murder merely upon the testimony of his accomplices. Second, appellant asserts the evidence is insufficient because he could not have anticipated a murder would take place after he left the house. Therefore, according to appellant, he could not be convicted under the law of parties.

We treat a complaint on appeal about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). In a legal sufficiency challenge, we review the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729–30 (Tex. Crim. App. 2005); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider all the evidence the jury was permitted to consider, *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), but we do not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact-finder, *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

## A. Sufficiency of Corroborating Evidence

Appellant asserts, and the State does not dispute, that several witnesses who testified against him were accomplice witnesses.[2] In order to convict upon the testimony of an accomplice witness, the accomplice's testimony must be corroborated by other evidence tending to connect the defendant with the offense. TEX. CODE CRIM. PROC. art 38.14. The corroborative evidence need not be

---

[2] An accomplice is one who participates with a defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).

sufficient in itself to establish guilt, however, nor must it directly link the accused to the commission of the offense. *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008).

Appellant's argument that the evidence only corroborated the assault is without merit. Detective Bradley testified appellant was arrested while in possession of a Bauer .25 caliber semiautomatic pistol. Edwin Wallace, a forensic scientist, testified the pistol was the same pistol used to shoot Baxter in the head. Thus, appellant is directly connected to a weapon used in the offense. *See Cockrum v. State*, 758 S.W.2d 577, 582 (Tex. Crim. App. 1988) (evidence that connects accused to weapon used in offense is proper corroborative evidence). Therefore, we conclude the accomplices' testimony was sufficiently corroborated by other evidence tending to connect appellant to the murder, and appellant could properly be convicted upon their testimony.

### B. Law of Parties

Appellant asserts the evidence is insufficient because he could not have anticipated a murder would take place after he left the Clemsford house—the house where Baxter was assaulted and murdered—and therefore, he could not be convicted under the law of parties. We disagree.

As applicable here, a person commits aggravated assault—a felony offense—if the person intentionally, knowingly, or recklessly causes serious bodily injury to another. TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(1) (Vernon Supp. 2009). A person commits murder—also a felony offense—if he intentionally or knowingly causes the death of an individual. *Id.* § 19.02(b)(1) (Vernon 2003). Under the law of parties, if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony committed if the felony was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy. *Id.* § 7.02(b). It

does not matter that the offense originally intended by a defendant—in this case, aggravated assault—subsequently escalated into murder. *See Gordon v. State*, 640 S.W.2d 743, 758 (Tex. App.—San Antonio 1982, no writ), *abrogated on other grounds by Reed v. State*, 744 S.W.2d 112, 125 n.10 (Tex. Crim. App. 1988).

Here, the evidence supports the State's theory that appellant and several others conspired to intentionally, knowingly, or recklessly cause serious bodily injury to Baxter. Clifford Vansyckle testified that prior to the evening of the assault and murder, Baxter bragged to Terry Adams that another man, Rudy Hettler, had hired him to "take out" appellant. Appellant heard about what Baxter told Adams. He knew it was not true because he and Hettler were like brothers, but he became extremely upset with Baxter for making it up. This led to talk of "disciplining" Baxter, which Vansyckle explained meant beating him up. On the night of the assault and murder, several people—including Baxter, Hettler, appellant, and Vansyckle—gathered in the garage at the Clemsford house, a place where people commonly gathered to use methamphetamine. Baxter was sitting on a bucket in the middle of the garage. Vansyckle, the self-proclaimed "enforcer" of the group, removed his shirt and began circling Baxter in preparation of "disciplining" him. Before the fight began, however, a man named Bryan Cyr and ten to fifteen other people entered the garage. Cyr had a gun, and it became apparent that several others had guns, including appellant.

Vansyckle then testified as to what happened next, including a narration of several videos of the assault recorded on a cell phone. A man named Lupe Villarreal punched Baxter in his cheek. Appellant began pacing back and forth in front of Baxter, staring him down. Vansyckle then saw appellant hit Baxter in the back of the head with a tire thumper.[3] Appellant later hit Baxter in the

---

[3] Vansyckle explained that a tire thumper is used to knock tires off or on when changing a flat.

temple with a baseball bat. Vansyckle heard the hit, turned, and saw Baxter on the ground dazed and twitching. Vansyckle testified he left the garage at that point, and later left the house; however, he narrated the mobile phone video clips showing the events that occurred after he left. The clips showed a man named Michael Yaws tying up Baxter who was on the ground. Cyr had his foot on Baxter's head. Vansyckle also testified he had seen another recorded video of the incident, which showed Yaws throwing a brick full force at Baxter's head. That video, however, was not admitted into evidence.

Vansyckle returned to the house after several hours. Several people were still in the garage with Baxter, including appellant, Villareal, Cyr, and Hettler. Vansyckle testified Baxter looked much worse but was still alive, was hog-tied, had been moved onto a tarp or a carpet, and appellant and Yaws were kicking him in the head and face. Around 4 a.m., Vansyckle left the Clemsford house with appellant and Hettler and dropped appellant off at his brother's house. Appellant had injured his foot while kicking Baxter, and Vansyckle noticed that he was limping. Later that morning, Vansyckle saw on the news that Baxter's body had been found behind a café.

Jonathon Boyer testified that the night of the assault and murder, he saw Villareal and Yaws "beating up on [Baxter]." Yaws had a baseball bat and acted as if he was going to hit Baxter, but appellant grabbed the bat, told Baxter "it's between me and you," swung the bat and hit Baxter in the head. Baxter fell to the floor and began to twitch. Boyer then left the garage because the disciplining "wasn't supposed to be . . . like that." When Boyer returned to the garage a few hours later, appellant, Cyr, Hettler, Villareal, Yaws, and several others were in the garage with Baxter. Baxter had been moved onto a black tarp and tied up. Blood was on the floor, tarp, walls, and garage door. Boyer saw appellant kicking Baxter. Appellant, Hettler, and Vansyckle were getting ready

to leave, and Boyer noticed appellant had a limp. Boyer went back upstairs to smoke methamphetamine, and after a few hours, he heard what sounded like firecrackers. Later that morning, Cyr told Boyer that Dane Batterton had "pulled the trigger."

Dane Batterton testified he had been severely beaten at the Clemsford house the night before the murder. The night of the murder, he spent most of his time sleeping on the couch and recovering from his beating. In the early morning after appellant had already left the house, Villareal woke Batterton and told him to come into the garage. There, Batterton saw Yaws and Villareal rolling up Baxter into a piece of carpet. Baxter was badly beaten, bloody, and appeared to be dead. Cyr told Batterton that he (Batterton) was going to be a part of this and he (Batterton) was going to shoot Baxter. Yaws gave Batterton a gun, put a bullet in the chamber for Batterton, pointed the gun inside the roll of carpet for Batterton, and Batterton pulled the trigger. Batterton, who had just received a severe beating the night before, testified he complied with Cyr's request because he "was in fear for [his] life . . . and didn't want to end up in the same position as [Baxter]." Later, Batterton met up with several others including appellant. Appellant told Batteron, "I owe you one; it would have been premeditated."

We conclude the evidence overwhelmingly supports the State's theory that appellant and several others conspired to assault Baxter and one or more of them intentionally or knowingly caused his death in furtherance of causing him serious bodily injury. Additionally, based on the severity of the beating, the weapons used, and Baxter's condition before or at the time appellant left, we conclude appellant should have anticipated that Baxter would die. For these reasons, we conclude appellant could properly be convicted under the law of parties. Furthermore, we conclude a rational

trier of fact could have found the essential elements of the offense beyond a reasonable doubt, and therefore, the trial court did not err in denying appellant's motion for a directed verdict.

### EXTRANEOUS OFFENSE

In his fourth issue on appeal, appellant argues the trial court erred by allowing into evidence (1) testimony regarding a prior attempt by appellant to shoot Baxter and (2) evidence of weapons and narcotics obtained during the arrest of Cyr and Villareal because the evidence was highly prejudicial. *See* TEX. R. EVID. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by danger of unfair prejudice).

We review the admission of evidence over a Rule 403 objection for an abuse of discretion. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A court abuses its discretion when its ruling falls outside the zone of reasonable disagreement. *Id.* at 440. However, any trial court error other than a constitutional error that does not affect substantial rights must be disregarded. TEX. R. APP. P. 44.2(b).[4] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Here, assuming without deciding that the trial court erred by admitting evidence of both the shooting attempt and the weapon and drug evidence obtained during the arrest of Cyr and Villareal, there is still overwhelming evidence appellant conspired to commit aggravated assault, one or more of the conspirators murdered Baxter, the murder was in furtherance of the assault, and appellant should have anticipated that Baxter would die as a result of the assault. *See Motilla v. State*, 78

---

[4] Appellant concedes any error in admitting the complained-of evidence amounts only to non-constitutional error.

S.W.3d 352, 357 (Tex. Crim. App. 2002) (we consider overwhelming evidence of guilt as factor in determining if harm exists).  Given all the evidence before the jury, it is unlikely that the admission of the shooting attempt or the weapons and drugs had a substantial effect on the jury's verdict.  *Cf. Ladd v. State*, 3 S.W.3d 547, 568 (Tex. Crim. App. 1999).  Accordingly, we conclude that any error was harmless.  *See* TEX. R. APP. P. 44.2(b).

**CONCLUSION**

We overrule appellant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

DO NOT PUBLISH