**Opinion issued August 11, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00290-CR

———————————

**FERNANDO RAZO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 208th District Court**
**Harris County, Texas**
**Trial Court Case No. 1416480**

---

## MEMORANDUM OPINION

A jury found appellant, Fernando Razo, guilty of the felony offense of

intoxication manslaughter[1] with a deadly weapon, and it assessed his punishment at

---

[1]    *See* TEX. PENAL CODE ANN. § 49.08 (Vernon 2011).

confinement for ten years.  In three issues, appellant contends that the trial court erred in excluding evidence of the complainant's marijuana use and toxicology report.

We affirm.

## Background

Noe Moczygemba testified that on February 2, 2014, while he was driving his truck on South Kirkwood Road, a "white Chevy truck" "passed" him "at a really high rate of speed," "shak[ing]" his truck and causing it to "rock from side-to-side." He then saw the white truck "impact[]" and "hit" a car, which went "flying from side-to-side" and "spin[ning] after the impact."  Moczygemba stopped his truck and went towards the car, and appellant exited the white truck.  Appellant then asked, "Hey, what happened?"  (Internal quotations omitted.)  Moczygemba responded, "You [were] the one driving the truck."  (Internal quotations omitted.)  And when appellant told him that he had "insurance," Moczygemba said, "That is the least of your worries . . . . [The driver of the car] looks like she is dying."  (Internal quotations omitted.)  Appellant then replied, "Oh[], shit," and he "took off running." (Internal quotations omitted.)  Another person, who had arrived at the scene, ran after appellant.  The driver of the car, the complainant, died at the scene.

Houston Police Department ("HPD") Officer D. Ciers, a member of HPD's Driving While Intoxicated ("DWI") task force, testified that on February 2, 2014, he

was dispatched to the scene of a "severe [car] accident" to conduct an investigation. Upon his arrival, he noted that appellant had a "very strong odor of an alcoholic beverage on his breath" and "red glassy eyes." And appellant's "walk[ing]" and "standing" were "unsteady." Appellant "admitted to drinking six or seven . . . beers," he had had his last drink "[j]ust before" he got into his truck, and he was "the one driving." (Internal quotations omitted.) After administering field sobriety tests to appellant, Ciers determined that he was "intoxicated and impaired." On cross-examination, appellant sought to question Ciers about "[t]he scientific names" for marijuana and the general "[e]ffects of marijuana" on one's mental and physical faculties; however, the trial court did not permit the questioning, stating "[i]t [was] not relevant yet."

HPD Officer C. Sartor, a member of HPD's "vehicular crimes division['s] crash reconstruction unit," testified that on February 2, 2014, he was dispatched to investigate the collision. Based on his investigation, he opined that appellant's truck was traveling at fifty-four miles per hour at the time that it collided with the complainant's car.[2] Sartor explained that appellant's truck "struck" the complainant's car "on the driver's side," causing it to "experience[] a change of a

---

[2] Officer Sartor further testified that at two-and-a-half seconds before the collision, appellant's truck was traveling at sixty-seven miles per hour; one second before the collision, sixty-six miles per hour; and "half a second" before the collision, at sixty miles per hour.

velocity of 30 miles an hour." The complainant had been driving in a "westerly direction" at a "pre-impact speed" of eighteen miles per hour. Upon impact with appellant's truck, her car went in a "northwesterly direction," and it was "pushed off to the right and to the left at the same time." Sartor opined that the collision was a result of appellant's "actions," and "[t]he crash would have happened," even had appellant not been "impair[ed]" because of the "speed that [his] vehicle was going."

Dr. Jeffrey Walterscheid, co-director of the toxicology laboratory for the Harris County Institute of Forensic Sciences ("HCIFS"), testified that he performed retrograde extrapolation on "two different blood draws" from appellant. He opined, based on the "[first] blood draw," that appellant had a blood alcohol concentration at the time of the collision "somewhere in the range of . . . .26 to . . . .30," "[m]ore than three times" the "legal limit." Based on the "second blood draw," Walterscheid opined that appellant had a blood alcohol concentration at the time of the collision "somewhere between . . . .24 and . . . .32." Thus, Walterscheid concluded that appellant was "intoxicated at the time of the crash."

When appellant sought to question Dr. Walterscheid about the general effects of marijuana on one's mental and physical faculties, the complainant's marijuana use, and the complainant's toxicology report, the trial court allowed him to do so only outside the presence of the jury. Walterscheid noted that he had reviewed the complainant's toxicology report, which showed that "Delta 9 tetrahydrocannabinol,"

an "active ingredient in marijuana," and "norcarboxytetrahydrocannabinol," "an active [marijuana] metabolite," were present in the complainant's blood. And he explained that the complainant's toxicology report is a record kept by HCIFS "in the regular course of business," he is the custodian of such records, and the report was accurate and had not been tampered with. Walterscheid, however, did not "perform the test[ing]" on, or "any physical analysis" of, the complainant's blood. Instead, "Ms. Shaw," who no longer works for HCIFS, "did the analysis." When appellant, based on Walterscheid's testimony, offered the complainant's toxicology report into evidence under the business-records exception to the hearsay rule,[3] the trial court sustained the State's objection.[4]

Still outside the presence of the jury, Dr. Walterscheid further testified that marijuana, in general, "tends to trigger [certain] receptors in the brain," which can affect a person's ability to "pay[] attention to different sorts of tasks that [she would] have to do to operate a vehicle safely." It can also "affect[] coordination to some degree, also memory, [including] being able to take . . . short term memory and apply it to making decisions." However, Walterscheid noted that it is impossible to

---

[3]     *See* TEX. R. EVID. 802 (rule against hearsay), 803(6) (exception to hearsay rule).

[4]     Appellant also sought to offer the complainant's toxicology report into evidence based on the testimony of Dr. Alex John, an assistant medical examiner for HCIFS, who had performed the autopsy on the complainant's body. John testified that he drew the blood from the complainant, but he did not perform any analysis on the blood. And he did not "use the results from the [complainant's] toxicology report" "to determine [her] cause of death."

5

determine "someone's [level of] impairment based solely on the amount of [marijuana] found in [that person's] body." "[I]t doesn't correlate very well," not in the same way as does alcohol. He explained that one cannot sufficiently determine a person's level of impairment by "looking at [a] toxicology report [for] marijuana alone." And one cannot "say with certainty [that] somebody [was] impaired just by looking at the number" on a toxicology report.

In regard to the complainant specifically, Dr. Walterscheid opined that "intoxication" due to her marijuana use "ha[d]n't taken . . . [e]ffect." The marijuana "ha[d]n't been introduced" into her system "long enough," and "[i]t ha[d]n't been absorbed" by her body at the time of the collision. He further opined that under the "conditions" surrounding the complainant at the time of the collision, "impairment" did not seem likely. Instead, it "seem[ed] more like the drug had just been introduced" into the complainant's body; "it hadn't . . . really soaked in and really started to affect the brain."

Further, Dr. Walterscheid explained that after the death of a person, "there is [actually] no way to evaluate if [she] had any kind of impairment" as a result of marijuana use. There is no way to "tell anything at all from just knowing" that a decedent had a certain amount of marijuana in her "system." And it would have been impossible for him to opine, "Oh, that is a lot of marijuana. Oh, it must be intoxicating." (Internal quotations omitted.) Here, there is simply no way to

6

"know[]" whether the complainant's marijuana use "impair[ed]" her mental and physical faculties at the time of the collision. There is "just not enough evidence [to] support[] that."

Following Dr. Walterscheid's testimony outside the presence of the jury, the trial court ruled that although the evidence of the complainant's marijuana use was "relevant," it was "more prejudicial than . . . probative."[5] Thus, the trial court prohibited appellant from questioning Walterscheid on such matters in front of the jury.

## Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to exclude evidence, we will not reverse the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996) (internal quotations omitted). We will uphold a trial court's evidentiary ruling

---

[5]     *See* TEX. R. EVID. 401 (test for relevant evidence), 402 (generally relevant evidence admissible), 403 (exclusion of relevant evidence).

7

if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## Exclusion of Evidence

In his three issues, appellant argues that the trial court erred in excluding evidence of the complainant's marijuana use because it was "relevant" to his "concurrent causation defensive theory," it was not "unfairly prejudicial," and the complainant's toxicology report constituted a "business record[]" exempt from the "hearsay rule." *See* TEX. R. EVID. 401, 402, 403, 802, 803(6).

In his first and second issues, appellant specifically complains that the trial court erroneously "prohibited" him from questioning Officer Ciers and Dr. Walterscheid about "the[] [scientific] names of marijuana" and the general "[e]ffects of marijuana" on one's mental and physical faculties. In regard to the complainant's marijuana use, appellant asserts that the trial court erroneously "prohibited" him from questioning Walterscheid about the results from her toxicology report and her level of "impair[ment]" at the time of the collision.

Relevant evidence is that which tends to make the existence of a fact of consequence to a determination of the case more or less probable than it would be without the evidence. TEX. R. EVID. 401. Relevant evidence is generally admissible. TEX. R. EVID. 402; *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). And relevancy is determined by whether "a reasonable person, with some experience

8

in the real world, [would] believe that the particular piece of evidence is helpful in determining the truth or falsity" of any fact of consequence. *Montgomery*, 810 S.W.2d at 376 (internal quotations omitted). To be relevant, evidence does not have to prove or disprove a particular fact; it is sufficient if the evidence provides "a small nudge toward proving or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004). Even "marginally probative" evidence should be admitted if "it has any tendency at all, even potentially, to make a fact of consequence more or less likely." *Fuller v. State*, 829 S.W.2d 191, 198 (Tex. Crim. App. 1992).

It appears that the parties disagree as to whether the trial court considered the evidence of the complainant's marijuana use to be relevant. Further, although appellant, in his first issue, asserts that the trial court "erroneously excluded the [complainant's] marijuana evidence under rule 401," he also states in his brief that "the trial court expressly found the [complainant's] marijuana evidence [to be] relevant." Nevertheless, whether the trial court actually considered the evidence of the complainant's marijuana use to be relevant is ultimately of no consequence. Even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403. Thus, we will presume for purposes of this opinion that the evidence of the complainant's

9

marijuana use was relevant.[6] *Cf. Ybarra v. State*, 768 S.W.2d 491, 495 (Tex. App.—

Houston [1st Dist.] 1989, no pet.) (accepting defendant's "assertion that the evidence

[was] relevant" and concluding trial court "properly excluded the evidence under

[r]ule 403").

To determine whether the probative value of relevant evidence is substantially

outweighed by the danger of unfair prejudice, we consider: "(1) the probative value

of the evidence; (2) the potential to impress the jury in some irrational yet indelible

way; (3) the time needed to develop the evidence; and (4) the proponent's need for

the evidence." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005); *see*

*also* TEX. R. EVID. 403. We will uphold a trial court's ruling on a rule 403 balancing

test, whether explicit or implied, if it is within the "zone of reasonable

disagreement." *Jabari v. State*, 273 S.W.3d 745, 753 (Tex. App.—Houston [1st

Dist.] 2008, no pet.); *see also Rachal v. State*, 917 S.W.2d 799, 808 (Tex. Crim.

App. 1996) (when reviewing trial court's determination of probative and prejudicial

value of evidence under rule 403, we reverse only upon showing of clear abuse of

discretion). Great deference is given to the trial court's decision to admit or exclude

---

[6]     Our review of the record reveals that the trial court ultimately concluded that the
        evidence of the complainant's marijuana use was "relevant." However, we note that
        early in the proceedings, the trial court did state that such evidence was "not relevant
        yet" due to appellant's inability at the time to show "marijuana ingestion" by the
        complainant.

evidence under rule 403. *See Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

The first factor—probative value—"looks to the evidence's probativeness or how compellingly the evidence serves to make a fact of consequence more or less probable." *Mechler*, 153 S.W.3d at 440. Appellant asserts that evidence of the complainant's marijuana use is probative, particularly in regard to his defensive theory of concurrent causation.[7]

Here, Dr. Walterscheid testified that it is impossible to determine "someone's [level of] impairment based solely on the amount of [marijuana] found in [that person's] body." According to Walterscheid, "it doesn't correlate very well," as does alcohol. One cannot sufficiently determine a person's level of impairment by "looking at [a] toxicology report [for] marijuana alone." And one cannot "say with certainty [that] somebody [was] impaired just by looking at the number" on a toxicology report.

---

[7]    "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (Vernon 2011). Thus, a defendant's conduct is excused where "the concurrent cause was clearly sufficient to produce the result and the conduct of the [defendant was] clearly insufficient." *Remsburg v. State*, 219 S.W.3d 541, 545 (Tex. App.—Texarkana 2007, pet. ref'd) (internal quotations omitted) (quoting TEX. PENAL CODE ANN. § 6.04(a)).

Moreover, Dr. Walterscheid opined that "intoxication" due to the complainant's marijuana use "ha[d]n't taken . . . [e]ffect." The marijuana "ha[d]n't been introduced" into her complainant's system "long enough," and "[i]t ha[d]n't been absorbed" by her body at the time of the collision. Walterscheid further opined that under the "conditions" surrounding the complainant at the time of the collision, "impairment" did not seem likely. Instead, it "seem[ed] more like the drug had just been introduced" into the complainant's body; "it hadn't . . . really soaked in and really started to affect the brain."

Dr. Walterscheid also explained that after the death of a person "there is [actually] no way to evaluate if [she] had any kind of impairment" as a result of marijuana use. There is no way to "tell anything at all from just knowing" that a decedent had a certain amount of marijuana in her "system." And it would have been impossible for him to opine, "Oh, that is a lot of marijuana. Oh, it must be intoxicating." (Internal quotations omitted.) Here, according to Walterscheid, there is simply no way to "know[]" whether the complainant's marijuana use "impair[ed]" her mental and physical faculties at the time of the collision. There is "just not enough evidence [to] support[] that."

Based on the foregoing, we conclude that the probative value, if any, of the evidence of the complainant's marijuana use is little, and this factor weighs against

12

the admissibility of such evidence.[8]  *See* TEX. PENAL CODE ANN. § 6.04(a) (Vernon

2011) (person criminally responsible unless concurrent cause *alone* clearly sufficient

to cause result and conduct of defendant clearly insufficient to cause result); *cf.*

*Saenz v. State*, 474 S.W.3d 47, 54–56 (Tex. App.—Houston [14th Dist.] 2015, no

pet.) (holding exclusion of evidence of complainant's blood alcohol concentration

error where record showed complainant walked in middle of roadway at night with

blood alcohol concentration twice legal limit and his normal use of mental and

physical faculties affected).

The second factor—potential to impress the jury in some irrational way—also

weighs against the admissibility of the evidence of the complainant's marijuana use.

---

[8]     We also note that Officer Sartor testified at trial that even had appellant not been "impair[ed]," "the crash would have happened" because of the speed that his truck was traveling at the time of the collision.  Thus, the complainant's marijuana use simply could not be conduct that "alone" was sufficient to cause her death with the conduct of appellant being clearly insufficient.  *See* TEX. PENAL CODE ANN. § 6.04(a); *cf. Saenz v. State*, 474 S.W.3d 47, 54–56 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding complainant's actions, by themselves, sufficient to cause his death).  This fact also makes evidence of the complainant's marijuana use less probative in regard to appellant's defensive theory of concurrent causation.

Further, appellant sought to question both Officer Ciers and Dr. Walterscheid about the general "[e]ffects of marijuana" on one's mental and physical faculties.  We note that the probative value of such general evidence is also very weak.  *See Rowell v. State*, No. 03-08-00451-CR, 2009 WL 1364351, at *4 (Tex. App.—Austin May 14, 2009, pet. ref'd) (mem. op., not designated for publication) (holding probative value weak regarding testimony concerning "cocaine users" in general and "what 'they' normally do to subsidize their drug habit" because "overly general and not closely linked to" particular case); *Ewes v. State*, 841 S.W.2d 16, 18 & n.1 (Tex. App.—Dallas 1992, pet. ref'd) (testimony and argument regarding "the 'drug world' . . . ha[d] no relevance whatsoever to the facts of th[e] case and [were] improper").

13

*See Mechler*, 153 S.W.3d at 440; *cf. McGee v. State*, No. 14-14-00067-CR, 2015 WL 3455321, at *4 (Tex. App.—Houston [14th Dist.] May 28, 2015, pet. ref'd) (mem. op., not designated for publication) (evidence defendant involved in buying narcotics had "potential to impress the jury in an irrational way"); *Moore v. State*, No. 14-08-00295-CR, 2009 WL 3210955, at *7 (Tex. App.—Houston [14th Dist.] Oct. 8, 2009, pet. ref'd) (mem. op., not designated for publication) (possible evidence of narcotics dealing, "an illegal endeavor held in low-esteem, could have impressed jurors in an irrational, indelible way").

Dr. Walterscheid's testimony about the results from the complainant's toxicology report indicate that the effect of her marijuana use on her level of impairment at the time of the collision is speculative at best. Specifically, he opined that marijuana "ha[d]n't been introduced" into her system "long enough" and "ha[d]n't been absorbed" by her body at the time of the collision. He explained that under the "conditions" surrounding the complainant at the time of the collision, "impairment" did not seem likely. Instead, it "seem[ed] more like the drug had just been introduced" into her body; "it hadn't . . . really soaked in and really started to affect the brain." Further, Walterscheid noted that after the death of a person, "there is [actually] no way to evaluate if [she] had any kind of impairment" as a result of marijuana use. There is simply no way to "tell anything at all from just knowing" that a decedent had a certain amount of marijuana in her "system." According to

14

Walterscheid, it would have been impossible for him to opine, "Oh, that is a lot of marijuana. Oh, it must be intoxicating." (Internal quotations omitted.) And in regard to this case specifically, there is simply no way to "know[]" whether the complainant's marijuana use "impair[ed]" her mental and physical faculties at the time of the collision.[9]

In Texas, the possession of marijuana is a criminal offense, and "some people may attach extremely negative associations to the [presence] of" marijuana in a person's system. *Cook v. State*, No. 12-05-00201-CR, 2006 WL 1633250, at *2 (Tex. App.—Tyler June 14, 2006, no pet.) (mem. op., not designated for publication); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 2010) (criminal offense of possession of marijuana); *see also id.* § 481.120 (Vernon 2010) (criminal offense of delivery of marijuana). This is especially concerning in the present case given that Dr. Walterscheid testified that the evidence does not show that the complainant was impaired at the time of the collision as a result of her marijuana use. Based on the foregoing, we conclude that evidence of the complainant's marijuana use had the potential to impress the jury in an irrational way, and this factor weighs against the admissibility of such evidence.

---

[9]  Although the complainant's toxicology report is not in the appellate record, we note that the trial court, in determining the admissibility of the evidence of the complainant's marijuana use, characterized the level of marijuana found in the complainant's body as "barely detectable" and "a miniscule amount."

In regard to the third factor—time needed to develop the evidence—it appears that appellant's questioning of Officer Ciers would have been relatively short.[10] *See Mechler*, 153 S.W.3d at 440. However, a review of the record indicates that appellant's questioning of Dr. Walterscheid, the co-director of HCIFS's toxicology laboratory who had reviewed the complainant's toxicology report, would likely have been extensive. And the record shows that appellant wanted to present two additional witnesses regarding the complainant's marijuana use. *See McGee*, 2015 WL 3455321, at *4 (third factor weighed in favor of finding evidence prejudicial, where State spent "more than a minimal amount of time developing the evidence through the testimony of many witnesses"). Thus, we conclude that the time needed to develop the evidence of the complainant's marijuana use weighs against the admissibility of such evidence.

Finally, the fourth factor—the proponent's need to develop the evidence—concerns whether appellant had other probative evidence available to him to help establish the fact and whether the fact was related to an issue in dispute. *See Mechler*, 153 S.W.3d at 440; *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). The trial court wholly prohibited appellant from introducing any evidence of the complainant's marijuana use. Thus, he could not rely on such

---

[10] The record indicates that appellant would have questioned Officer Ciers regarding "[t]he scientific name[s]" for marijuana and the general "[e]ffects of marijuana."

16

evidence to support his defensive theory of concurrent causation. *See* TEX. PENAL CODE ANN. § 6.04. However, based on Dr. Walterscheid's testimony, evidence of the complainant's marijuana use would have had minimal force in establishing that her actions or omissions sufficiently supported appellant's concurrent causation defensive theory. Further, we note that appellant relied on other evidence elicited at trial, independent of the evidence of the complainant's marijuana use, to argue and support his defensive theory, and he obtained a jury instruction on his defense at trial. *Cf. Saenz*, 474 S.W.3d at 56 ("exclusion" of complainant's blood alcohol concentration "effectively denied [defendant] the ability to present her defense of concurrent causation"). Based on the foregoing, we conclude that appellant's need to develop evidence of the complainant's marijuana use weighs only slightly for the admissibility of such evidence.

After considering all of the factors, we conclude that the trial court's conclusion that the probative value of the evidence of the complainant's marijuana use was substantially outweighed by the danger of unfair prejudice did not fall outside the zone of reasonable disagreement. *See* TEX. R. EVID. 403; *Jabari*, 273 S.W.3d at 753. Accordingly, we hold that the trial court did not err in excluding the evidence of her marijuana use.

We overrule appellant's first and second issues.

Having held that the trial court did not err in excluding evidence of the complainant's marijuana use on the ground that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice, we need not address appellant's third issue in which he contends that the complainant's toxicology report constituted a "business record[]" exempt from the "hearsay rule." *See* TEX. R. EVID. 802, 803(6).

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).