

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00093-CR
_____

MICHAEL JOHN BRUMLEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court
Burleson County, Texas
Trial Court No. 24,604

Before Morriss, C.J., Stevens and van Cleef, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Michael John Brumley was stopped by a Caldwell police officer in the early morning hours of February 23, 2020, when he failed to stop at a stop sign. When the officer smelled alcohol on Brumley's breath and Brumley admitted to having consumed alcohol, the officer administered field sobriety tests and arrested Brumley. Subsequently, Brumley was convicted by a Burleson County[1] jury of driving while intoxicated (DWI).[2] After the trial court found that Brumley had previously been convicted of operating a motor vehicle while intoxicated, it convicted him of a Class A misdemeanor and sentenced him to thirty days in jail and a $1,500.00 fine.[3] On appeal, Brumley complains that the evidence was insufficient to support his DWI conviction and that the evidence was insufficient to support the trial court's finding that he had previously been convicted of operating a motor vehicle while intoxicated. We find that (1) sufficient evidence supports Brumley's conviction for DWI but that (2) insufficient evidence supports the trial court's finding that Brumley had previously been convicted of operating a motor vehicle while intoxicated. Therefore, we reverse the trial court's judgment convicting Brumley of the Class A misdemeanor offense of operating a motor vehicle while intoxicated, and we remand this cause to the trial court with instructions to reform the judgment to reflect a

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T. CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. PENAL CODE ANN. § 49.04(b) (Supp.) (providing that an offense of operating a motor vehicle in a public place while intoxicated is a Class B misdemeanor, with a minimum term of confinement of seventy-two hours).

[3]*See* TEX. PENAL CODE ANN. § 49.09(a) (Supp.) (providing that "an offense under Section 49.04 . . . is a Class A misdemeanor, with a minimum term of confinement of 30 days, if it is shown . . . that the person has previously been convicted one time of an offense relating to the operating of a motor vehicle while intoxicated").

2

conviction of the Class B misdemeanor offense of operating a motor vehicle while intoxicated and to conduct a new punishment hearing attendant to the post-reformation conviction.

*(1)     Sufficient Evidence Supports Brumley's Conviction for DWI*

Brumley challenges the sufficiency of the evidence supporting his DWI conviction. The Court of Criminal Appeals has expressed the standard of review on a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

3

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018); *Rodriquez v. State*, 630 S.W.3d 522, 525–26 (Tex. App.—Waco 2021, no pet.). "The Court of Criminal Appeals has also explained that our review of 'all of the evidence' includes evidence that was properly and improperly admitted." *Lockett v. State*, No. 10-16-00209-CR, 2017 WL 3927178, at *1 (Tex. App.—Waco Sept. 6, 2017, no pet.) (mem. op., not designated for publication) (quoting *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)). Further, "it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties." *Id.* (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)).

"A person commits Class B misdemeanor DWI if the person is intoxicated while operating a motor vehicle in a public place." *Ramjattansingh v. State*, 548 S.W.3d 540, 548 (Tex. Crim. App. 2018) (citing TEX. PENAL CODE ANN. § 49.04(a), (b)). As applied in this case, "'[i]ntoxicated' means either 'not having the normal use of mental or physical faculties' by reason of 'the introduction of alcohol' . . . into the body, or 'having an alcohol concentration of

4

0.08[4] or more.'"[5] *Id.* (quoting TEX. PENAL CODE ANN. § 49.01(2) (A), (B)). "In order to prove the offense of driving while intoxicated, the State must prove that the defendant operated a motor vehicle while intoxicated." *Id.* Brumley challenges the sufficiency of the evidence that he was intoxicated when he was operating his motor vehicle.

The State presented testimonial and video evidence that Brumley had been stopped by police shortly after one o'clock in the morning because he failed to stop at a stop sign. John Hammons, the Caldwell police officer who initiated the stop, testified that he smelled metabolized[6] alcoholic beverage coming from Brumley's vehicle when he first made contact. He also testified that Brumley's eyes were glassy or watery and that he smelled metabolized alcoholic beverage on Brumley's breath. Hammons also noted that Brumley's eyes were bloodshot and that his speech was thick-tongued. After Brumley told him that he had consumed two beers, Hammons, who was certified to conduct standardized field sobriety tests, administered three such tests on Brumley.

Hammons explained each test and testified that the horizontal gaze nystagmus (HGN) test has the higher probability of showing that a person's blood alcohol concentration (BAC) is greater than 0.08. He testified that Brumley had six out of six clues on the HGN test, one out of eight clues on the walk-and-turn test, and one out of four clues on the one-leg-stand test. He

---

[4]"Alcohol concentration" is defined as "the number of grams of alcohol per: (A) 210 liters of breath; (B) 100 milliliters of blood; or (C) 67 milliliters of urine." TEX. PENAL CODE ANN. § 49.01(1).

[5]"The first definition is the 'impairment' theory, while the second is the 'per se' theory. They are not mutually exclusive, and, as long as there is evidence that would support both definitions, both theories are submitted in the jury charge." *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (citing *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005)). In this case, both definitions were included in the trial court's charge.

[6]Hammons explained that metabolized alcoholic beverage has a pungent sour smell that is produced when a person drinks alcohol.

5

initially testified, without objection, that a person who has all six clues on the HGN test would 100 percent have a BAC above 0.08. On cross-examination, he testified that six out of six clues would have a high probability of a BAC above 0.08 and that the HGN test by itself was eighty-eight percent accurate. Hammons opined that the difference in the results of the HGN test and the other two tests was due to Brumley's tolerance level, because a person with a greater tolerance level will perform better on the physical tests, but he would not be able to control the involuntary jerking of the eyes seen in the HGN test.

Brumley was arrested and taken to jail, where he was requested, but refused, to submit a breath sample. Hammons obtained a warrant for a blood draw. Before his blood was drawn, Brumley aggressively refused to have his blood drawn and became argumentative and belligerent, at one point telling one of the officers, "I'll see you on the street." Brumley's blood was drawn at 3:45 a.m.

Salina Vargas, a forensic scientist with the Texas Department of Public Safety Crime Laboratory in Austin, testified that a toxicology analysis of Brumley's blood showed 0.123 grams of alcohol per 100 milliliters of blood. She testified that alcohol in the blood will affect reaction time, visual acuity, peripheral vision, and depth perception; causes HGN; and slows information processing. She also testified that a BAC above 0.08 will affect mental and physical faculties. She explained that eighty percent of alcohol is absorbed within thirty to sixty minutes of the last drink, and she explained the rate at which alcohol is eliminated from the body. She then estimated that of a man of Brumley's weight with a BAC of 0.123 would have had a BAC of 0.139 to 0.172 one hour and forty minutes before the blood draw. However, she

acknowledged that she could not give an estimate of what Brumley's BAC would have been at the time he was driving because she did not know when he stopped drinking and did not have other information necessary to make that calculation.

Brumley acknowledges that both the results of a blood draw taken hours after his arrest and the results of his HGN test are admissible and probative to show intoxication at the time of driving. *See Kirsch*, 306 S.W.3d at 744; *Emerson v. State*, 880 S.W.2d 759, 768–69 (Tex. Crim. App. 1994). Nevertheless, he argues that, because the HGN test is not sufficiently reliable to support a finding of a specific BAC and the hours-later blood draw is not conclusive to show the BAC at the time of driving absent sufficient retrograde extrapolation testimony, *see Kirsch*, 306 S.W.3d at 744; *Emerson*, 880 S.W.2d at 769, the State has failed to prove that he was intoxicated when he was driving under the *per se* theory of intoxication. He also argues that, because he did well on the walk-and-turn test and the one-leg-stand test, the results of the HGN test are suspect and created reasonable doubt under the impairment theory of intoxication.

The Texas Court of Criminal Appeals has held that an hours-later BAC test result is not sufficient, by itself, to establish intoxication at the time of driving. *Kirsch*, 306 S.W.3d at 745. However, it has also held that such BAC test results, "even absent expert retrograde extrapolation testimony, are often highly probative to prove both per se and impairment intoxication." *Id.* In addition to the hours-later BAC test result, "[t]here must be other evidence in the record that would support an inference that the defendant was intoxicated at the time of driving as well as at the time of taking the test." *Id.* The court explained:

> Other evidence that would logically raise an inference that the defendant was intoxicated at the time of driving as well as at the time of the BAC test includes,

*inter alia*, erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, any admissions by the defendant concerning what, when, and how much he had been drinking[—]in short, any and all of the usual indicia of intoxication.

*Id.* (citing *Stewart v. State*, 129 S.W.3d 93, 96–97 (Tex. Crim. App. 2004)).

In this case, in addition to the evidence that Brumley had a BAC of 0.123 two hours and forty minutes after he was stopped, Hammons testified that he observed six out of six clues on the HGN test performed shortly after the stop, which he testified was eighty-eight percent accurate that Brumley's BAC was 0.08 or above. The evidence also showed that Brumley failed to stop at a stop sign and that, at the time of the stop, Brumley had the odor of metabolized alcohol on his breath, bloodshot and glassy eyes, and thick-tongued speech and that he admitted that he had drunk "two beers." Video recording showed that Brumley swayed during the one-leg-stand test and ended the test before its conclusion. Further, although Brumley performed acceptably on the walk-and-turn and one-leg-stand tests overall, the jury could have accepted Hammons's explanation that that could be attributed to tolerance. Based on this evidence, any rational jury could have found that Brumley was intoxicated at the time he was driving.

Based on this record, we find that sufficient evidence supports Brumley's DWI conviction. We overrule this issue.

*(2)* *Insufficient Evidence Supports the Trial Court's Finding that Brumley Had Previously Been Convicted of Operating a Motor Vehicle While Intoxicated*

A DWI offense is a Class B misdemeanor. TEX. PENAL CODE ANN. § 49.04(b). However, if the State shows in the punishment phase of the trial that the defendant "has previously been convicted one time of an offense relating to the operating of a motor vehicle

8

while intoxicated," the offense is elevated to a Class A misdemeanor. *Oliva v. State*, 548 S.W.3d 518, 521, 534 (Tex. Crim. App. 2018); TEX. PENAL CODE ANN. § 49.09(a). Brumley contends that the evidence is insufficient to support the trial court's finding that he had been convicted of a prior DWI as alleged in the amended information. We agree.

"To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007) (citing *Banks v. State*, 158 S.W.3d 649, 651–52 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)). "No specific document or mode of proof is required to prove these two elements. There is no 'best evidence' rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document." *Id.* The Texas Court of Criminal Appeals has explained:

> While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction.

*Id.* at 921–22 (citations omitted).

"[O]rdinarily the proof that is adduced to establish that the defendant on trial is one and the same person that is named in an alleged prior criminal conviction or convictions closely resembles a jigsaw puzzle." *Id.* at 23 (quoting *Human v. State*, 749 S.W.2d 832, 835–36 (Tex.

9

Crim. App. 1988) (op. on reh'g)). Although standing alone the pieces may have little meaning, "when the pieces are fitted together, they usually form the picture of the person who committed that alleged prior conviction or convictions." *Id.* (quoting *Human*, 749 S.W.2d at 836). By considering the totality of the evidence admitted, the trier of fact determines "1) whether there was a previous conviction, and 2) whether the defendant was the person convicted." *Id.* Only when "these two elements can be found beyond a reasonable doubt," will "the various pieces used to complete the puzzle" be "legally sufficient to prove a prior conviction." *Id.*

In this case, the amended information alleged that, "on or about January 14, 1991, in cause number 1-51,553 in the Victoria County Court at Law #2, in Victoria County, Texas, the defendant was convicted of an offense relating to the operating of a motor vehicle while intoxicated." At the punishment hearing, the State introduced a certified copy of a judgment entered on April 3, 1989, in cause number 1-51,553 in the County Court at Law of Victoria County, in which "Michael John Brumley" was convicted of operating a motor vehicle while intoxicated, assessed a $450.00 fine and forty-five days confinement, and placed on probation for two years. The April 3, 1989, judgment also contains the right index fingerprint of the defendant in that case. The State also introduced a certified copy of a judgment entered on January 14, 1991, in cause number 1-51,553 in the County Court at Law Number 2 of Victoria County, in which the probation granted "Michael John Brumley" in the April 3, 1989, judgment was revoked and he was ordered to be confined in jail for forty-five days. The January 14, 1991, judgment also contains the right index fingerprint of the defendant in that case. Neither of those judgments contained any other identifying information of the defendant, such as a birth date,

10

driver's license number, or photograph. Nor did the State offer any expert testimony that the fingerprints on those judgments match Brumley's fingerprint.

In support of the trial court's finding that Brumley was the defendant in those judgments, the State first notes that Brumley's name is the same as the defendant named in the January 14, 1991, judgment. However, even if the name on the prior judgment is the same as the defendant on trial, that is generally not sufficient to show they are the same person. *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986) (en banc). Rather, the State must show that the defendant is the same person as the defendant in the prior conviction by independent evidence. *Id.* In addition, Brumley's name is not so unique that it would support a finding that he is the same person as the defendant in the prior conviction. *See Strehl v. State*, 486 S.W.3d 110, 114–15 (Tex. App.—Texarkana 2016, no pet.) (finding that, even though Joseph Leo Strehl, III, was a rather distinctive name and the offenses were committed in the same county, the evidence was insufficient to link defendant to the prior offense).

As for independent evidence, the State argues that Brumley was born in 1963, which indicates that he would have been of driving age in 1991. However, that does not serve to link Brumley to the prior conviction since every other person of the same name born before and including 1975 would also have been of driving age in 1991. The State also cites the testimony of Cindy Kennedy, who acknowledged that Brumley had told her that he had another DWI offense thirty years before. However, Kennedy testified that she had known Brumley for four years and that she had no knowledge of the details of that offense, such as the date or county where Brumley committed the offense. Since it was the State's burden to prove that Brumley

11

was convicted of a DWI in the specific case it alleged in its information, evidence that he had admitted to Kennedy that he had another DWI thirty years before, with nothing more, did not link him to the alleged prior conviction.

Even considered together and in the light most favorable to the trial court's finding, we find that this evidence is insufficient to support the trial court's finding that Brumley was the person named in the April 3, 1989, and January 14, 1991, judgments. We sustain this issue.

In this case, Brumley was convicted of the Class A misdemeanor offense of operating a motor vehicle while intoxicated. However, the State failed to show that Brumley had previously been convicted one time of an offense relating to the operating of a motor vehicle while intoxicated. Therefore, we reverse the trial court's judgment convicting Brumley of the Class A misdemeanor offense of operating a motor vehicle while intoxicated. We remand this cause to the trial court with instructions to reform the judgment to reflect a conviction of the Class B misdemeanor offense of operating a motor vehicle while intoxicated and to conduct a new punishment hearing attendant to the post-reformation conviction. *See* TEX. PENAL CODE ANN. §§ 49.04(b), 49.09(a); *Thornton v. State*, 425 S.W.3d 289, 307 (Tex. Crim. App. 2014).

Josh R. Morriss, III
Chief Justice

Date Submitted:      December 19, 2022
Date Decided:       December 20, 2022

Do Not Publish

12