# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00298-CR

**Christopher Scott Parker, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 264TH DISTRICT COURT OF BELL COUNTY
### NO. 79168, THE HONORABLE STEVEN J. DUSKIE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Christopher Scott Parker challenges his conviction for engaging in sexual contact with a child on the ground that the trial court erred in admitting article 38.37 evidence over his Rule 403 objection. We are unpersuaded by his arguments and affirm the conviction.

## BACKGROUND

Three preteen neighborhood girls frequented Parker's house to play with Parker's son, A.J., who was one of their best friends. The Parkers' house was a neighborhood favorite; it had a pool, a trampoline, a go-kart, a golf cart, an electric motorcycle, Hot Wheels, and action figures. All four kids were in the fourth or fifth grade. Sometimes the girls' parents also would come over, and the neighbors would barbeque.

After two of the girls—cousins E.N. and G.S.—outcried about sexual abuse by Parker to their aunt, a third girl, K.M., outcried to her mother. A grand jury indicted Parker on one

count of sexual contact with E.N., a child younger than 17 years of age. At trial, E.N., then 16, testified. And, under article 38.37—which permits, in a trial for indecency with a child, the admission of similar offenses "for any bearing the evidence has on relevant matters"—G.S. and K.M. did too. *See* Tex. Code Crim. Proc. art. 38.37, § 2(b). All three testified that Parker rubbed their genitals and behinds, either on top of or underneath their clothes and bathing suits. And he did so multiple times while they sat in his lap in his chair in the living room or while they swam in his pool. The article 38.37 evidence was admitted over Parker's objections that it violated Texas Rule of Evidence 403. The jury convicted Parker, and, after a punishment hearing, assessed his punishment at 15 years' imprisonment.

## ANALYSIS

### *Admission of Article 38.37 Evidence*

Parker concedes that the extraneous-offense evidence was probative, but argues that the evidence was substantially outweighed by the Rule 403 dangers.

### *Applicable Law and Standard of Review*

When a defendant is tried for a sexual offense committed against a child, and notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, the State can introduce evidence that he had committed a separate sexual offense against another child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2(b). Even so, article 38.37 evidence is subject to exclusion under Rule 403. *Love v. State*, 706 S.W.3d 584, 613 (Tex. App.—Austin 2024, pet. ref'd).

Under Rule 403, if the probative value of evidence is substantially outweighed by certain dangers, the evidence is inadmissible. *Gonzalez v. State*, 544 S.W.3d 363, 371 (Tex. Crim. App. 2018). The dangers identified in the rule are "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403.

"Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). Rule 403 should be used "sparingly" to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in "he said, she said" sexual assault cases. *Hammer v. State*, 296 S.W.3d 555, 562 (Tex. Crim. App. 2009).

We review a trial court's decision to admit evidence for an abuse of discretion. *Colone v. State*, 573 S.W.3d 249, 263–64 (Tex. Crim. App. 2019). "Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the 'zone of reasonable disagreement.'" *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). In reviewing a Rule 403 decision, an appellate court should "measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is made," by considering (1) how compellingly the extraneous evidence serves to make a fact of consequence more or less probable; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time needed to develop the evidence; and (4) the force of the proponent's need for this evidence to prove a fact of consequence. *Perkins v. State*, 664 S.W.3d 209, 217 (Tex. Crim. App. 2022); *Colone*, 573 S.W.3d at 266.

*Application*

**(1) How compelling is the relevant extraneous evidence?**

Parker acknowledges that the evidence of the contemporaneous similar separate sexual offenses against the other similarly aged children was probative of a character or propensity to commit sexual assaults on children. We agree. Again, article 38.37 expressly authorizes admission of this type of evidence "for any bearing the evidence has on relevant matters." Tex. Code Crim. Proc. art. 38.37, § 2(b). And here, the extraneous-offense evidence bore on a subject of a genuine controversy—whether Parker had a sexual interest in children. *See Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (evidence that defendant had committed extraneous sexual offenses against two other children was "straightforward and directly relevant" to only issue in case, whether defendant abused complainant child). As the State notes, the evidence was also probative under the doctrine of chances. This is because "highly unusual events are unlikely to repeat themselves inadvertently or by happenstance." *De La Paz v. State*, 279 S.W.3d 336, 347–48 (Tex. Crim. App. 2009). For it is objectively improbable that Parker would be involved in multiple unusual events with the girls (such as an accidental touching while roughhousing or being the subject of multiple false allegations), which, in turn, leads to the ultimate inference that Parker committed the charged crime.

We find this factor weighs in favor of admission.

**(2) What potential does the other offense evidence have to impress the jury "in some irrational but nevertheless indelible way"?**

Here, Parker notes that the evidence was inherently inflammatory and prejudicial; this trial "became one about three victims"; and the considerable evidence the State put on about

4

the extraneous offenses likely "confused or distracted the jury from the main issue which was whether Parker committed the charged offense against the victim named in his indictment."

Although sexually related bad acts and misconduct involving children are by their nature inflammatory, the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. It must be unfairly so. Tex. R. Evid. 403. It must do something like encourage a decision on an improper basis by arousing the jury's sympathy or hostility without regard to the logical probative force of the evidence or distract the jury from the main issue in the case—and it must do so in a manner that substantially outweighs that evidence's probative value. *Valadez v. State*, 663 S.W.3d 133, 142 (Tex. Crim. App. 2022); *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). But here, the evidence was not particularly graphic or sensational, and the extraneous acts were no more serious than, and fairly identical to, the allegations that were the basis for the charged offense. *Love*, 706 S.W.3d at 614 ("The extraneous offenses committed by Love against Turner were similar in kind, intensity, and frequency to his charged conduct.").

These extraneous offenses were unlikely to distract jurors or tempt them to make a decision on an emotional ground. Rather, the evidence set the stage for the jury's comprehension of the charged crime. The extraneous offenses were so intertwined with the charged offenses that the factfinder would believe it all or believe none of it.

For example, G.S. was present when E.N. outcried first to their aunt and then to E.N.'s mother. Their aunt testified that, at a family gathering, when the three were alone in a room, she had questioned E.N. in front of G.S. She asked E.N. how she was feeling about her mother and stepfather breaking up and if E.N., her mother, and her siblings would be moving in with the Parkers. E.N. responded that yes, but "Chris [Parker] lives there and he is nasty." When the aunt

5

sought more information, E.N. paused and looked at G.S. across the room and said, "Do you think we should tell her?" G.S. did not respond, but E.N. stated, "[H]e touches our butts." The aunt informed the girls' mothers.

G.S.'s mother responded by checking G.S. out of school. As they sat in the parking lot, she asked G.S. whether Parker had touched her and she answered that he had touched her butt and her "tee." G.S.'s mother then went back inside the school and checked out E.N. Once E.N. was in the car with G.S., G.S.'s mother questioned E.N., who also said that Parker had touched her butt. G.S.'s mother testified that G.S. was scared, shaking, and crying and that E.N. was upset. G.S.'s mother called her sister (E.N.'s mother), and she called the police, who responded to her sister's home. Both girls, their mothers, G.S.'s father, and E.N.'s stepfather were all there.

E.N. testified that some of the inappropriate touching occurred in the pool, when all three girls were together:

> We would be in the pool and I guess, I don't know if you could call it a game. But he would be in the pool with us and it be me, [G.S.], and [K.M.]. And he would get one of us and then whoever was not—whoever he didn't have in his hands, would like try to fight him off or like try to get the other girl away from him.

And, during the game, "He would touch us." E.N. also testified that she saw him touch the other girls. "The incident in the chair it wasn't just me . . . . There were also some times where it was me and [K.M.] or me and [G.S.]." K.M. testified she had seen Parker touch E.N. "We would be watching a show called 'Cops.' And we would usually sit in his lap and then he would touch us." And, when all three of them were in the pool, "He would capture us and then we would try to help one another get away from him[.]" And "[w]hen he captured us he would put his hand down the bathing suit and rub our private."

6

Instead of carrying the potential to impress the jury in some irrational, yet indelible way, the extraneous offenses in this case provided the jury with information essential to understanding the context and circumstances of events that were blended and interwoven. *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

We hold this factor weighs in favor of admission.

**(3) How much time was needed to develop the evidence?**

Parker argues that the extraneous evidence consumed a substantial portion of the trial. He argues it would lead a juror to believe the extraneous evidence "added gravitas to the State's case [and] that it necessarily was due additional weight in their deliberations associated with, and corresponding to, the time necessary for its presentation."

This factor looks to the time the proponent will need to develop the evidence during which the jury will be distracted from consideration of the indicted offense. *State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005). Courts generally agree that where the presentation of extraneous-offense evidence consumes a large portion of the trial this factor weighs in favor of exclusion. *See James v. State*, 623 S.W.3d 533, 550–51 (Tex. App.—Fort Worth 2021, no pet.) (factor weighed in favor of exclusion where extraneous-offense evidence consumed large portion of trial); *Newton v. State*, 301 S.W.3d 315, 321 (Tex. App.—Waco 2009, pet. ref'd) (collecting cases). We agree that the presentation of extraneous-offense evidence consumed a large portion of Parker's trial. Here, as Parker points out, not only did G.S. and K.M. testify, so did their mothers, their nurse examiner, and G.S.'s counselor. Even though it is unlikely that the jury was distracted from consideration of the indicted offense, given the interwoven nature of the charged offense and the extraneous offenses, we find this factor weighs in favor of exclusion.

7

**(4) Did the proponent need the evidence?**

Parker argues that the State did not need the evidence because the victim was a sophomore in high school at the time of trial; her testimony was articulate, poised, and coherent; and he did not strongly attack her credibility or argue he had been framed.

But we note that this was a "he said, she said" trial in which the jury was called upon to decide the case solely upon two completely different versions of events, unaided by any tangible evidence—the kind of case where Rule 403 exclusion should be used "sparingly." *Hammer*, 296 S.W.3d at 561–62.

In opening, Parker stated that the evidence would show that E.N.'s accusations arose as her mother and stepfather were splitting up, and her mother was considering moving herself and her children in with Parker, his wife, and A.J. He characterized the accusations that followed as wild. "The one who is going to offer his home to this mother and child during this split of this other family is wildly accused of this act." And then he suggested that the three children talked each other into making the allegations. "They talked amongst themselves where it became this story that Christopher Parker touched [E.N.]. Then touched this other girl and then likely touched this other girl." Parker also stated no scientific evidence would corroborate the accusations and that the story grew: "I expect the evidence will show that these aren't concrete details over time but there is a fluidity. There is a growth. There is an expansion, possibly, embellishment. The longer the time period from 2018, 2019, 2020 now to 2024. Again, this is among girls who see each other, [are] related with each other, and visit with each other. We are confident the evidence will show there is no proof."

When cross-examining E.N., defense counsel focused on the fact that she continued to come over even though Parker had been allegedly touching her and that she had made

8

inconsistent statements—now testifying that he touched her in the pool although she had indicated that nothing happened in the pool when she made her statement to the prosecutor.

When cross-examining a forensic interviewer, Parker brought out testimony that some of the characteristics of this case—leading questioning by a person who is emotionally close to the child, questioning a child in front of another child, children talking about the acts amongst themselves—risked tainting a child's answers and testimony.

Parker himself testified that he did not understand why the accusations had been made and that he "always felt I was of a very outstanding character." He had no idea "why [any of the girls] would say the things that they are saying," and he did not know of any reason why each of their mothers would coerce or coach their respective daughters.

His wife also testified. She deemed the accusations "ridiculous." She also had no idea why the girls would make them up. It was her idea to invite E.N., her siblings, and their mother to live with them to get them away from mother's husband. Parker's wife did not think E.N.'s mother would have coached E.N. to make up the accusations but said "I can't say the same thing about [her stepfather]." Nor did she think G.S. or K. M.'s parents put them up to making the allegations.

Without G.S.'s and K.M.'s testimony concerning similar acts that Parker committed against them in similar circumstances, "the State's case would have basically come down to" E.N.'s word against Parker's. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). E.N.'s credibility, given the attempts to impeach her testimony with prior inconsistent statements and questions suggesting that she was coached, was clearly the focal issue in the case. We find this factor weighs in favor of admission.

9

**(5) Was the probative value of the evidence substantially outweighed by the danger of unfair prejudice?**

After measuring the trial court's ruling against the relevant criteria, we find that there was not a "clear disparity between the degree of prejudice of the offered evidence and its probative value." *See Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). The evidence here is like that admitted in *Bradshaw v. State*:

> The charged offense involves a claim that Bradshaw continuously sexually assaulted S.S. during the summertime between her seventh and eighth grade years of school when she was thirteen years old, and for some portion of the following school year. The assaults against S.S. took place in the home where Bradshaw lived with his wife, who is S.S. and A.G.'s mother. Both A.G. and K.M. described encounters with Bradshaw in this home as well. This testimony is probative as it provides valuable context in which S.S.'s claims could be evaluated by the jury. It further illuminates the circumstances in which S.S.'s outcry was made to her Aunt Miranda. The collective outcry by A.G., K.M., and S.S. happened only when they disclosed to each other the "sexual problems" Bradshaw caused each of them. The outcry happened in the midst of great angst and emotion. The girls were described as "crying hysterically," at which time A.G. told Miranda that "[Bradshaw has] been messing with us, and we can't take anymore, and [S.S.] has been getting the brunt of it."

466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd). The appeals court held that admission of the evidence, though prejudicial, was not unfairly so, given that the case was a "he said, she said" case—the exact kind contemplated by the legislature when it enacted article 38.37. *Id*. at 883-84.

Here, only one factor—the time it took for the State to put on its extraneous offense case—weighs against admission. And even it does not strongly do so given that the danger presented by lengthy presentations of extraneous offense is distraction. *Mechler*, 153 S.W.3d at 441. Here, the presentation of the evidence did not take the jury's focus off the charged offense,

10

or at least not far from it.  We hold that the court's decision to admit the extraneous evidence was not an abuse of discretion.  *Perkins*, 664 S.W.3d at 217; *Colone*, 573 S.W.3d at 263–64.

## CONCLUSION

Having overruled Parker's sole complaint, we affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed:   February 18, 2026

Do Not Publish